**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>**Freida Rosen**</u>

    v.                             Case No. 20-cv-1059-PB
                                            Opinion No. 2021 DNH 032

<u>**Genesis Healthcare, LLC et al.**</u>

<u>**MEMORANDUM AND ORDER**</u>

Freida Rosen filed this employment discrimination action against her former employer, Genesis Healthcare, LLC and related entities (collectively, "Genesis"). Genesis has moved to compel arbitration and stay the complaint pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"). Genesis argues that Rosen agreed to arbitrate her claims against Genesis and that the arbitration agreement delegates to an arbitrator the authority to resolve threshold issues of arbitrability. Rosen objects to arbitration on the grounds that the arbitration agreement lacks consideration, is unconscionable, and was induced by fraud. Although the arbitration agreement delegates these types of challenges to the arbitrator, she argues that they should be addressed by the court because the challenges apply in the same way to both the agreement as a whole and its delegation provision. I agree with Rosen that her challenges must be resolved by the court, but I ultimately determine that

1

her challenges are meritless.  Accordingly, I grant Genesis'
motion to compel arbitration and stay the complaint.

## I. BACKGROUND

Rosen was employed by Genesis as the business office
manager at the Crestwood Center retirement home in Milford, New
Hampshire.  She worked there from August 2000 until July 2019,
when she was allegedly forced to retire at the age of eighty-
one.  Rosen asserts claims for discrimination and retaliation in
violation of the Age Discrimination in Employment Act, 29 U.S.C.
§ 621 et seq., the Americans with Disabilities Act, 42 U.S.C.
§ 12101 et seq., and Chapter 354-A of the New Hampshire Revised
Statutes, N.H. Rev. Stat. Ann. § 354-A:1 et seq.

On May 1, 2019, approximately two weeks before Rosen
submitted her notice of retirement, Genesis asked all employees
to sign a Mutual Arbitration Agreement ("MAA").  See Supp. Aff.
of Gwen Eagen, Doc. No. 10-1 ¶¶ 6-7.  The MAA was assigned to
each employee as a task in the company's "On-Track" electronic
database to review and sign by May 31, 2019.  Doc. No. 10-1
¶¶ 6, 11.  Rosen signed it on May 7.  Doc. No. 10-1 ¶ 15.

Section 2 of the MAA, titled "DISPUTES COVERED BY THE
AGREEMENT," provides:

> Employer and I mutually agree to the resolution by
> arbitration of all disputes, claims or controversies,
> past, present or future, including without limitation,
> claims arising out of or related to my application for
> employment, employment, and/or the termination of my

2

employment that Employer may have against me or that I
may have against [Employer] . . . .

Covered disputes also include any claim or controversy
regarding the Agreement or any portion of the
Agreement or its interpretation, enforceability,
applicability, unconscionability, or formation, or
whether the Agreement or any portion of the Agreement
is void or voidable . . . .

Ex. 2 to Aff. of Gwen Eagen, Doc. No. 7-1 at 6.  The MAA
stipulates that "[t]he mutual obligations by Employer and me to
arbitrate disputes provide consideration for this Agreement."
Doc. No. 7-1 at 6.

The MAA permits the parties to exchange requests for
production of documents and gives each party a right to conduct
two depositions, in addition to depositions of the other party's
experts.  It obligates Genesis to pay all of the arbitrator's
costs except for a $200 filing fee, which must be paid by the
party seeking arbitration.  It also specifies that each party
will be responsible for its own costs and attorney's fees unless
a party prevails on a claim which allows for the recovery of
fees or the parties have a written agreement that allows fees to
be received.  Doc. No. 7-1 at 8.

Rosen alleges that she was not given a meaningful
opportunity to review the MAA or consult with an attorney before
she was required to sign it.  See Aff. of Freida Rosen, Doc. No.
8-2 ¶¶ 4-10, 14-15.  A company representative informed Rosen
that the MAA was mandatory, that her employment would not

3

continue if she did not sign it, and that by signing it she "was being offered continued employment."  Doc. No. 8-2 ¶¶ 7, 15. Rosen signed the MAA on May 7 because she "was under the impression" that she would otherwise be terminated that same day.  Doc. No. 8-2 ¶ 14.  Her supervisor, Judith Matchett, had previously told Rosen on multiple occasions that it was time for Rosen to retire, and Rosen feared that the company would use her failure to sign the MAA as an excuse to terminate her employment.  Doc. No. 8-2 ¶¶ 2-5.  Matchett ratcheted up the pressure the same week Rosen was presented with the MAA by falsely claiming that there were issues with Rosen's performance and informing Rosen that she would be terminated if she did not retire.[1]  See Doc. No. 8-2 ¶ 19.

Rosen also believed that she had to sign the MAA to continue to have full access to the On-Track system, including training and payroll information, because she could not "figure out" how to access other portions of the system once the MAA came up.  Doc. No. 8-2 ¶ 8.  She also could not "figure out" how to print the MAA before signing it.  Doc. No. 8-2 ¶ 8.  Genesis has submitted evidence showing that each employee had the option to print the MAA before signing it and retained full access to

---

[1] Rosen does not specify whether this incident occurred before or after she signed the MAA.

the On-Track system even if the employee did not sign the MAA.
See Doc. No. 10-1 ¶¶ 9-10.

## II.  STANDARD OF REVIEW

The First Circuit has yet to identify the proper standard
of review for a motion to compel arbitration. Baker v.
Montrone, 2020 DNH 006, 2020 WL 128531, at *1 (D.N.H. Jan. 10,
2020). In my view, "[i]f the answer is apparent on the face of
the complaint, the Rule 12(b)(6) standard will suffice. If the
court must consult evidence to resolve the issue, the summary
judgment standard must be employed." Id. (quoting Pla-Fit
Franchise, LLC v. Patricko, Inc., 2014 DNH 109, 2014 WL 2106555,
at *3 (D.N.H. May 20, 2014)). Here, the parties primarily rely
on affidavits and exhibits that cannot be considered in ruling
on a motion to dismiss. Accordingly, I will resolve the motion
using the summary judgment standard.

Summary judgment is appropriate when the record reveals "no
genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law." Fed. R. Civ. P.
56(a); Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir.
2016). In this context, a "material fact" is one that has the
"potential to affect the outcome of the suit." Cherkaoui v.
City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (internal
quotation marks omitted). A "genuine dispute" exists if a jury

could resolve the disputed fact in the nonmovant's favor.  Ellis v. Fidelity Mgmt. Trust Co., 883 F.3d 1, 7 (1st Cir. 2018).

The movant bears the initial burden of presenting evidence that "it believes demonstrates the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); accord Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016).  Once the movant has properly presented such evidence, the burden shifts to the nonmoving party to designate "specific facts showing that there is a genuine issue for trial," Celotex, 477 U.S. at 324, and to "demonstrate that a trier of fact could reasonably resolve that issue in its favor." Flovac, 817 F.3d at 853 (internal quotation marks and brackets omitted).  If the nonmovant fails to adduce such evidence on which a reasonable factfinder could base a favorable verdict, the motion must be granted.  See id.  In considering the evidence presented by either party, all reasonable inferences are to be drawn in the nonmoving party's favor.  See Theriault v. Genesis HealthCare LLC, 890 F.3d 342, 348 (1st Cir. 2018)

### III. ANALYSIS

The FAA directs courts to treat arbitration agreements as "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  There is a strong federal presumption in favor of arbitration.  Moses H. Cone Memorial Hosp. v. Mercury Constr.

Corp., 460 U.S. 1, 24–25 (1983).  Even so, "[a]rbitration is strictly a matter of consent, and thus is a way to resolve those disputes — *but only those disputes* — that the parties have agreed to submit to arbitration."  Dialysis Access Ctr. v. RMS Lifeline, Inc., 638 F.3d 367, 376 (1st Cir. 2011) (quoting Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 299 (2010)).

A party seeking to compel arbitration must demonstrate "that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope."  Dialysis Access Center, 638 F.3d at 375 (internal quotation marks omitted).  At issue in this case is only the first requirement — the existence and validity of the arbitration agreement.

I begin by addressing the question of who should decide the gateway issues of arbitrability.  I then resolve those challenges that are reserved for the court.

A.  **Who Decides Arbitrability**

Rosen opposes arbitration on the grounds that the MAA lacks consideration, is unconscionable, and was induced by fraud.  These challenges concern threshold issues of arbitrability.  Rosen's first argument raises a contract formation question, that is, whether an agreement to arbitrate was formed in the

first place.  The parties agree that the court must resolve this
dispute.  The remaining two challenges pertain to the validity
of the arbitration agreement.  The parties dispute whether the
court or the arbitrator should resolve those challenges.
Genesis argues that the MAA delegates to the arbitrator the
power to resolve challenges to the validity or enforceability of
the agreement.  Rosen responds that the delegation clause is
unenforceable because it suffers from the same defects as the
MAA as a whole and, therefore, the court has the authority to
decide whether the MAA is valid and enforceable.[2]

---

[2] In her motion papers, Rosen only challenged the validity of the
MAA as a whole, and both parties assumed that the court should
resolve all arbitrability disputes.  At the motion hearing,
however, Genesis argued that the MAA delegates to the arbitrator
the authority to resolve Rosen's challenges to the validity of
the MAA, citing Rent-A-Center, West, Inc. v. Jackson, 561 U.S.
63, 68–69 (2010).  Rosen responded that Rent-A-Center does not
apply because the MAA's delegation clause is invalid on the same
grounds as the MAA as a whole.  Ordinarily, a party "cannot
utilize oral argument as a forum for unveiling new arguments of
which [the opposing party] did not have proper notice or
opportunity to challenge." Cashmere & Camel Hair Mfrs. Inst. v.
Saks Fifth Ave., 284 F.3d 302, 309 (1st Cir. 2002).  In this
case, however, I permitted the parties to orally supplement
their briefs to incorporate their belated arguments because each
side had a meaningful opportunity to respond and the court was
not deprived "of the benefit of a robust debate informed by
zealous advocacy." Outdoor Media Grp., Inc. v. City of
Beaumont, 506 F.3d 895, 900 (9th Cir. 2007).  Further, to the
extent Rosen argues that Genesis waived the right to arbitrate
arbitrability by failing to raise it in its papers, she has
failed to show any prejudice from the delay.  See Creative Sols.
Grp., Inc. v. Pentzer Corp., 252 F.3d 28, 32 (1st Cir. 2001)
("Waiver [of the right to arbitrate] is not to be lightly
inferred, and mere delay in seeking arbitration without some
resultant prejudice to a party cannot carry the day.").

Disputes about gateway issues such as the validity, enforceability, or scope of an arbitration agreement raise questions of arbitrability.  See Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 68-69 (2010); Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002).  Ordinarily, arbitrability questions are decided by a court.  AT&T Techs., Inc. v. Commc'n Workers of Am., 475 U.S. 643, 649 (1986).  The parties, however, may agree to delegate arbitrability questions to an arbitrator, "so long as the parties' agreement does so by 'clear and unmistakable' evidence." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 530 (2019) (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).  Such an agreement, often called a delegation clause, "is simply an additional, antecedent [arbitration] agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." Rent-A-Center, 561 U.S. at 70.

Section 2 of the FAA establishes the rule that "an arbitration provision is severable from the remainder of the contract." Id. at 70-71 (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445 (2006)).  The severability rule applies whether an arbitration provision is codified as a clause within a broader contract or as a separate arbitration contract altogether.  See id. at 72.  As a result, a delegation clause

9

within an arbitration agreement is severable from the underlying agreement, and "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing" it.  Id.  In other words, when an arbitration agreement contains a delegation clause, and the party objecting to arbitration challenges the validity of the arbitration agreement as a whole, or the validity of a contract of which the arbitration agreement is simply a part, any such challenges must be referred to the arbitrator.  But if the party opposing arbitration specifically challenges the validity of the delegation clause itself, then the court, rather than the arbitrator, must decide those challenges.  Id. at 71.  "A court cannot reach the question of the arbitration agreement's enforceability unless a party challenged the delegation clause and the court concludes that the delegation clause is not enforceable."  MacDonald v. CashCall, Inc., 883 F.3d 220, 226 (3d Cir. 2018).

In Rent-A-Center, the parties signed an agreement to arbitrate claims arising out of their employment relationship. 561 U.S. at 65-66.  The plaintiff challenged the arbitration agreement on unconscionability grounds.  Id.  The arbitration agreement contained a delegation clause, in which the parties specified that the arbitrator would decide arbitrability disputes.  Id.  Because the delegation clause was severable from

10

the rest of the arbitration agreement, and the plaintiff failed to specifically challenge the delegation clause, the Court concluded that it had to give effect to the delegation clause and allow the arbitrator to determine whether the arbitration agreement was unconscionable.  Id. at 72.

The Supreme Court suggested, however, that if the plaintiff in Rent-A-Center had challenged the delegation clause on the same basis as the arbitration agreement as a whole, then the court could decide that challenge.  See id. at 74 ("It may be that had [plaintiff] challenged the delegation provision by arguing that these common [arbitration] procedures *as applied* to the delegation provision rendered *that provision* unconscionable, the challenge should have been considered by the court.").  Based on this dictum, as least two circuit courts have held that "[i]n specifically challenging a delegation clause, a party may rely on the same arguments that it employs to contest the enforceability of other arbitration agreement provisions."  MacDonald, 883 F.3d at 226-27; accord Gibbs v. Sequoia Capital Operations, LLC, 966 F.3d 286, 291 (4th Cir. 2020).  "As a result, courts have construed a party's argument that the 'delegation clause suffers from the same defect as the arbitration provision' to be a sufficient challenge to the delegation provision itself."  Gibbs, 966 F.3d at 291 (quoting MacDonald, 883 F.3d at 226-27).

11

In this case, as in Rent-A-Center, the delegation clause is part of a stand-alone arbitration agreement.  The MAA defines "[c]overed disputes" as "any claim or controversy regarding the [MAA] or any portion of the [MAA] or its interpretation, enforceability, applicability, unconscionability, or formation, or whether the [MAA] or any portion of the [MAA] is void or voidable."  Doc. No. 7-1 at 6.  This language clearly and unmistakably commits authority over arbitrability disputes to the arbitrator.  As a result, under Rent-A-Center, the delegation clause is severable from the rest of the MAA.  Unlike the plaintiff in Rent-A-Center, however, Rosen specifically contests the validity of the delegation clause.  She argues that the delegation clause is unconscionable and a product of fraud for the same reasons as the entire MAA.  Therefore, it is for the court, not the arbitrator, to resolve her challenges to the delegation clause.  See Rent-A-Center, 561 U.S. at 74; Gibbs, 966 F.3d at 291; MacDonald, 883 F.3d at 226-27.

**B.   Contract Formation Challenge**

Rosen challenges the MAA's formation on the ground that she received no consideration when she signed it.  Genesis concedes that this contract formation challenge must be resolved by the court.[3]  It argues that the parties' mutual obligations to

---

[3] The Supreme Court has suggested, and numerous circuit courts have held, that contract formation disputes are not delegable

12

arbitrate, its agreement to pay the costs of arbitration, and Rosen's continued employment provided sufficient consideration.

When resolving disputes concerning the existence of an arbitration agreement, courts "apply ordinary state-law principles that govern the formation of contracts." Kaplan, 514 U.S. at 944.  Under New Hampshire law, consideration is an essential element of a contract.  Tsiatsios v. Tsiatsios, 140 N.H. 173, 178 (1995).  "Consideration is present if there is either a benefit to the promisor or a detriment to the promisee."  Chisholm v. Ultima Nashua Indus. Corp., 150 N.H. 141, 145 (2003).  "[F]orbearance of a legal right . . . provides consideration sufficient to form a contract."  Derry & Webster, LLC v. Bayview Loan Servicing, LLC, 2014 DNH 264, 2014 WL 7381600, at *3 (D.N.H. Dec. 29, 2014) (citing Latulippe v. New

---

and must always be decided by a court.  See Rent-A-Center, 561 U.S. at 70 n.2 (noting that its holding does not apply to "the issue whether any agreement between the parties 'was ever concluded'") (quoting Buckeye, 546 U.S. at 444 n.1); Fedor v. United Healthcare, Inc., 976 F.3d 1100, 1105 (10th Cir. 2020) ("The issue of whether an arbitration agreement was formed between the parties must always be decided by a court, regardless of whether the alleged agreement contained a delegation clause or whether one of the parties specifically challenged such a clause."); In re: Auto. Parts Antitrust Litig., 951 F.3d 377, 385-86 (6th Cir. 2020); Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd., 944 F.3d 225, 234 (4th Cir. 2019); Lloyd's Syndicate 457 v. FloaTEC, L.L.C., 921 F.3d 508, 515 (5th Cir. 2019); cf. Nat'l Fed'n of the Blind v. The Container Store, Inc., 904 F.3d 70, 80 (1st Cir. 2018) (noting that there is "an important distinction between arguments challenging the validity of an agreement and those challenging an agreement's formation").

Eng. Inv. Co., 77 N.H. 31 (1913); 3 Williston and Lord,
Williston on Contracts § 7:47 (4th ed.)).  "In bilateral
contracts, bargained-for reciprocal promises fulfill the
consideration element."  Downeast Energy Corp. v. Frizzell, No.
2010-0401, 2011 WL 13092668, at *1 (N.H. July 6, 2011); see
Swanson v. Priest, 95 N.H. 64, 66 (1948) ("It is fundamental
that mutual promises furnish adequate consideration for each
other.").  Courts applying this basic principle "have held that
the equal obligation of an employee and employer to arbitrate
disputes . . . is enough to ensure mutuality of obligation and
thus constitute consideration."  Soto v. State Indus. Prod.,
Inc., 642 F.3d 67, 76 (1st Cir. 2011) (internal quotation marks
omitted) (citing cases and holding the same under Puerto Rico
law).

Rosen's argument that the MAA fails for want of
consideration is unavailing.  Rosen and Genesis made mutual
promises to arbitrate any claims against each other and thus
relinquished their legal rights to litigate such claims in
court.  These reciprocal promises constitute consideration
sufficient to form a contract.  See Downeast Energy, 2011 WL
13092668, at *1; Soto, 642 F.3d at 76; Derry & Webster, 2014 WL
7381600, at *3.

Rosen contends that consideration is lacking because she
gave up her rights to an already existing dispute concerning

14

age-based harassment, whereas Genesis only gave up rights to hypothetical disputes that, due to the nature of their relationship, were unlikely to materialize.  This is a challenge to the adequacy of consideration, not its existence.  It is a general principle of contract law that "courts will not inquire into the adequacy of consideration in an agreed-upon exchange, unless that consideration is so grossly inadequate as to shock the conscience of the court."  P.R. Elec. Power Auth. v. Action Refund, 515 F.3d 57, 64 (1st Cir. 2008) (internal quotation marks omitted).  The parties' mutual promises to arbitrate do not satisfy this demanding standard.

In any event, Genesis also agreed to pay the costs of arbitration (apart from the initial filing fee) and continued to employ Rosen, an at-will employee, for two months after she signed the MAA.  Cf. Smith, Batchelder & Rugg v. Foster, 119 N.H. 679, 683 (1979) ("Continued employment after signing an employment contract constitutes consideration for a covenant not to compete contained therein.").  Genesis, therefore, provided adequate consideration for Rosen's promise to arbitrate her claims against the company.

## C.   **Validity Challenges**

Rosen argues that the delegation clause is invalid because it is procedurally and substantively unconscionable and was induced by fraud.  These are the same arguments she employs to

contest the validity of the entire MAA.  Genesis maintains that
the record does not support Rosen's arguments.

>    1.   Unconscionability

"[U]nder the FAA, courts analyze unconscionability issues
under normal state law unconscionability standards." Britto v.
Prospect Chartercare SJHSRI, LLC, 909 F.3d 506, 515 (1st Cir.
2018) (internal quotation marks and brackets omitted).  The New
Hampshire Supreme Court has recognized that unconscionability
generally requires "an absence of meaningful choice on the part
of one of the parties together with contract terms which are
unreasonably favorable to the other party." Pittsfield Weaving
Co. v. Grove Textiles, Inc., 121 N.H. 344, 346 (1981) (per
curiam) (internal quotation marks omitted).  In other words, the
complaining party must demonstrate both procedural and
substantive unconscionability.  See id.; Landry v. Time Warner
Cable, Inc., 2017 DNH 152, 2017 WL 3431959, at *4 (D.N.H. Aug.
9, 2017).

Rosen argues that the delegation clause is procedurally
unconscionable for the same reasons as the MAA as a whole.
Specifically, she claims she was under pressure to sign the MAA,
had no meaningful opportunity to review it, had to sign it as a
condition of employment, could not negotiate its terms, and was
not provided with a copy of the applicable American Arbitration
Association ("AAA") rules.  These arguments are meritless.

The record does not support Rosen's claim that Genesis either exerted undue pressure on her to sign the MAA or gave her inadequate time to review its contents.  Genesis has submitted evidence showing that Rosen, like all other employees, had 31 days (from May 1 to May 31, 2019) to review and sign the MAA. Although Rosen states that she "was under the impression" that she had to sign it on May 7, she does not specify what action, if any, Genesis took to create this impression.  Her unsubstantiated belief that she had to sign the MAA in a matter of days is not enough to create a genuine dispute of fact.  See Quinones v. Houser Buick, 436 F.3d 284, 291 (1st Cir. 2006) ("Without first-hand knowledge of facts supporting his allegations, [the plaintiff] could not simply testify to a belief . . . .").

As for Rosen's argument that the urgency stemmed from her lack of access to the On-Track system until she signed the MAA, her affidavit merely establishes that she could not "figure out" how to access the system.  Considering that there is no evidence that she sought help with this issue or otherwise raised a concern with Genesis at the time, Rosen has not controverted evidence submitted by Genesis that she, like all other employees, continued to have full access to the system even if

she did not sign the MAA.[4]  Therefore, the record is bereft of evidence that Genesis deprived Rosen of a meaningful opportunity to review the MAA.

Next, Rosen argues that the MAA is procedurally unconscionable because it was imposed as a condition of her employment.  Even if signing the MAA was a condition of Rosen's employment, this would not prove "an absence of meaningful choice."  See Pittsfield Weaving Co., 121 N.H. at 346.  Rather, it would show "a personally difficult choice, but hardly a legally unconscionable one."  Landry, 2017 WL 3431959, at *4; see Soto, 642 F.3d at 78 ("[A]n arbitration agreement is not made unenforceable . . . merely because signing it was a condition of continued employment."); Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 17 (1st Cir. 1999) (holding that although signing arbitration agreement was condition of employment, agreement was not unconscionable).

Rosen also argues that Genesis had greater bargaining power and she could not negotiate the terms of the MAA.  "Mere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable

---

[4] The same is true with respect to Rosen's claim that she could not "figure out" how to print the MAA before signing it. Genesis has submitted evidence showing that she had the ability to print the agreement for later review, and Rosen does not claim that she tried to get help with the printing issue.

18

in the employment context." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991). Similarly, the fact that the terms of an arbitration agreement are not negotiable does not render it unconscionable. See Rosenberg, 170 F.3d at 17, 19 n.16 (rejecting unconscionability claim where plaintiff "had no ability to choose or even negotiate the terms of the arbitration agreement"); cf. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593 (1991) (rejecting challenge to enforceability of non-negotiable forum selection clause).

Lastly, Rosen's claim that she was not provided with a copy of the AAA rules is flatly contradicted by the record. The MAA expressly provided that "the AAA Rules are available through Employer's Human Resources Department or via the internet at www.adr.org/employment." Doc. No. 7-1 at 7. In today's age, "following a hyperlink is like turning a page in a printed document. Any reasonable viewer would realize that access to the text of the terms would be simple and immediate." In re Daily Fantasy Sports Litig., No. MDL 16-02677-GAO, 2019 WL 6337762, at *10 (D. Mass. Nov. 27, 2019); see Landry, 2017 WL 3431959, at *4 (rejecting procedural unconscionability claim where employer provided access to arbitration rules through the internet). Therefore, Rosen's procedural arguments are not sufficient to challenge the validity of the delegation clause, or, by extension, the validity of the MAA. Cf. Gibbs, 966 F.3d

at 292 ("[B]ecause the challenge to the delegation provision
necessarily encompassed and included arguments that related to
the entire arbitration agreement, the district court did not err
by assessing those arguments.").

Even if Rosen had established procedural unconscionability,
however, her unconscionability challenge cannot succeed because
she has not shown that the delegation clause is substantively
unconscionable.  Rosen's substantive unconscionability arguments
assail the MAA's limitation on the number of depositions and her
inability to recover the costs of arbitration.  Both arguments
fail as a matter of law because there is no evidence that the
challenged terms, as applied to the delegation clause, are
"unreasonably favorable" to Genesis.  See Pittsfield Weaving
Co., 121 N.H. at 346.

First, both parties waived their right to recover costs.
In addition, Genesis agreed to pay all costs of the arbitrator
but the $200 filing fee, and even the filing fee can be waived
if a party demonstrates inability to pay it.  See Doc. No. 7-1
at 8.  There is no evidence what other costs, if any, Rosen
would have to bear to arbitrate her arbitrability claims.  Thus,
the record does not permit a reasonable inference that paying
such costs would be "prohibitively expensive" to Rosen.  See
Biller v. S-H OpCo Greenwich Bay Manor, LLC, 961 F.3d 502, 517

(1st Cir. 2020) (quoting Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 90–92 (2000)).

Second, Rosen has not shown that deposing only two fact witnesses in the context of submitting threshold questions of arbitrability to the arbitrator would impede her ability to challenge the MAA.  In any case, the MAA gives the arbitrator discretion to allow additional discovery, alleviating any concern that the limitation on the number of depositions would stifle Rosen's ability to arbitrate arbitrability.

In sum, Rosen has not shown that the delegation clause is either procedurally or substantively unconscionable. Accordingly, there is no basis to invalidate the delegation clause on the ground of unconscionability.

### 2.   Fraudulent Inducement

Rosen claims that Genesis fraudulently induced her to sign the MAA and that, by extension, the delegation clause is a product of fraud.  Specifically, she maintains that Genesis misled her by promising continued employment if she signed the MAA, while all along intending to terminate her.  Genesis responds that Rosen confuses the recognition that her continued employment as an at-will employee would constitute ratification of the MAA, with a guarantee of indefinite employment.

Under New Hampshire law, fraud in the inducement can be raised to invalidate a contract.  See, e.g., Van Der Stok v. Van

Voorhees, 151 N.H. 679, 682 (2005).  To prevail on a claim of
fraudulent inducement, a plaintiff must show that the defendant
(1) made a misrepresentation; (2) had the purpose to induce the
plaintiff to act or refrain from action in reliance on that
misrepresentation; (3) the plaintiff acted in justifiable
reliance upon the misrepresentation; and (4) the plaintiff
suffered some pecuniary loss.  Restatement (Second) of Torts
§ 525 (1977); see Gray v. First NH Banks, 138 N.H. 279, 283
(1994) (citing Restatement (Second) of Torts § 525 (1977)).  The
standard of justifiable reliance "is not that of ordinary care,
but an individual standard, based upon [the plaintiff's] own
capacity and knowledge."  Smith v. Pope, 103 N.H. 555, 559
(1961).  The plaintiff's "educational level, intelligence,
experience in the business world, and common sense are all
relevant in determining whether reliance was justified."
Trefethen v. Liberty Mut. Grp., Inc., 2013 DNH 081, 2013 WL
2403314, at *7 (D.N.H. May 31, 2013).

For the purpose of resolving this claim, I accept Rosen's
statement that it was "represented to [her] by Matchett and
other Company representatives that by signing [the MAA], [she]
was being offered continued employment, and [she] relied on this
representation when [she] agreed to sign the agreement."  Doc.
No. 8-2 ¶ 7.  Rosen maintains that this was a misrepresentation
because that same week, Matchett told Rosen she would be

terminated if she did not retire, and she was in fact terminated approximately two months after she signed the MAA.  See Doc. No. 8-2 ¶¶ 19-20.

It is undisputed that Rosen was an at-will employee, meaning that both Rosen and Genesis were "free at any time to terminate the employment relationship, with or without cause." Porter v. City of Manchester, 151 N.H. 30, 37 (2004) (internal quotation marks omitted).  Having worked as a business office manager for nearly two decades, Rosen was experienced enough in the business world to understand the terms of her employment. Her reliance on a promise of continued employment was not justifiable because her experience and common sense would have informed her that, as at-will employee, she could be dismissed at any time.  Thus, as a matter of law, Rosen has not demonstrated that she was fraudulently induced to sign the MAA, precluding her fraud-based challenge to the delegation clause.

## IV.   CONCLUSION

I do not write on a clean slate.  The United States Supreme Court has given real bite to the FAA in its many decisions supporting arbitration agreements, and the New Hampshire Supreme Court has established the ground rules for challenges to the formation and validity of a contract.  Because Rosen has failed to successfully challenge the formation of the MAA or the validity of the delegation clause, I must enforce the delegation

clause by staying this action under § 3 of the FAA, 9 U.S.C. § 3, and compelling arbitration.[5]  Accordingly, the defendants' motion to stay this action and compel arbitration (Doc. No. 6) is granted.  The case shall be stayed, and the clerk shall administratively close the case, subject to reopening at the request of either party, as appropriate, following arbitration.

        SO ORDERED.

                                /s/ Paul J. Barbadoro
                                Paul J. Barbadoro
                                United States District Judge

February 5, 2021

cc:  Timothy J. Brock, Esq.
     Trevor Brice, Esq.
     K. Joshua Scott, Esq.

---

[5] To the extent Rosen's challenges to the delegation clause rely upon arguments that necessarily relate to the MAA as a whole, she cannot relitigate those issues in arbitration by challenging the validity of the MAA on the same grounds.  Cf. Gibbs, 966 F.3d at 292.